No. 13-0603 – *Ron King, "Fire Marshal/Code Official" for the City of Nitro, David A. Casebolt, duly elected and serving Mayor for the City of Nitro, and the City of Nitro, a municipal corporation and political subdivision of the State of West Virginia v. Richard J. Nease and Lorinda J. Nease, husband and wife*

**FILED**

April 10, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Benjamin, Justice, dissenting:

I am compelled to dissent to the majority's legally unsound, illiberal, and cramped construction of this State's Freedom of Information Act.

The majority's legal analysis of the statutory language at issue amounts to nothing more than judicial embroidery and has no support in our law. According to W. Va. Code § 29B-1-3(5), "[t]he public body may establish fees reasonably calculated to reimburse it for its actual cost in making reproductions of such records." This language could not be clearer and is not susceptible to more than one reasonable construction. A reasonable person would understand these words to mean that a public body may charge a fee for the cost of copying records requested by a person under the Freedom of Information Act. According to our law, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). The majority simply should have applied this clear language to the "retrieval fee" at issue in this case and concluded that the fee is not authorized by the Act.

1

Instead, the majority opinion engages in a tortured analysis that manages to disregard every applicable rule of statutory construction and violate both the letter and spirit of the Freedom of Information Act. As noted above, the majority errs in its implicit finding that the statutory language is ambiguous. The majority opinion further errs in finding that the authority of a public body to charge a "retrieval fee" is encompassed in the single word "fees." In so finding, the majority opinion pays lip service to this Court's maxim "that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is used," *HCCRA v. Boone Memorial Hosp.*, 196 W. Va. 326, 338, 472 S.E.2d 411, 423 (1996) (citations omitted), and then proceeds to define the word "fees" in isolation while choosing to ignore the context in which is it used.

The majority opinion makes a big to-do in ascertaining the dictionary definition of "fees," and then contrasts this definition with that of the word "costs" before deciding that the term "fees" is intended to cover more than just mere duplication-related costs. All of this fuss about definitions is unnecessary because the meaning of the word "fees" is obvious from the context in which it is used. The statutory language plainly indicates that a public body "may establish fees reasonably calculated to reimburse it for its actual cost in making reproductions of such records." W. Va. Code § 29B-1-3(5). The term "fees" is not separate from the phrase "actual cost in making reproductions of such records," but rather it is limited by it. The statutory language does not provide that a public body may establish fees. Instead, it provides that a public body may establish fees *reasonably calculated to reimburse it for its actual cost in making reproductions of such*

2

*records.* Therefore, contrary to the assertion in the majority opinion, the statutory language provides that the term "fees" covers only duplication-related costs. In finding that "fees" stands alone and in addition to the cost in making reproductions of such records, the majority opinion reads the statute at issue in a way that is foreign both to the law of this Court as well as any reasonable understanding of the English language.

In yet another abuse of this Court's rules of statutory construction, the majority opinion chides the circuit court for its reasoning that if the Legislature had intended to authorize the imposition of retrieval fees it would have said so in the statute. The majority opinion even includes a bizarre statement in footnote 13 that "the trial court fails to appreciate that the converse is equally true: If the Legislature had wanted to prohibit the potential imposition of search fees, a proscription against the use of such fees could have been included in FOIA." Of course, the majority opinion could not be more wrong in this matter. This Court has held:

> A statute which provides for a thing to be done in a particular manner or by a prescribed person or tribunal implies that it shall not be done otherwise or by a different person or tribunal; and the maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies to such statute.

Syl. pt. 1, *State ex rel. Battle v. Hereford*, 148 W. Va. 97, 133 S.E.2d 86 (1963). When this rule is applied to the statutory language at issue, I must conclude that because the Legislature expressly authorized public bodies to charge a fee only for the cost of

3

reproducing requested records, it did not authorize public bodies to charge any other kinds of fees including retrieval and search fees.

Further, the majority opinion errs by construing the statutory language inconsistent with the spirit and purpose of the Freedom of Information Act. In W. Va. Code § 29B-1-1 (1977), the Legislature set forth the policy underlying the Freedom of Information Act as follows:

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.

While the majority opinion recognizes the mandate to construe the provisions of the Act liberally, it blithely avows that the mandate is not relevant in this case because "no disclosure-related provision was at issue in this case." This is incorrect. The amount that a public body may charge for the production of records directly affects the disclosure of records. This is due to the fact that the amount charged for the production of records is inversely related to how many people will file requests for the production of records and,

4

therefore, how many records ultimately will be disclosed. Prior to the majority opinion, a person who could not afford to pay a fee for the cost of reproducing requested records could go to the government office where the records are held and view the records at no charge. As a result of the majority opinion, this is no longer true. I predict that most or all public bodies soon will charge a retrieval or search fee for producing records under the Freedom of Information Act, and that some people who desire to request certain records will be prohibited from doing so because of their inability to pay the retrieval or search fee. When the transparency of a government is lost, can the legitimacy the public holds for such a government be far behind?

In sum, the majority opinion is more than just a frontal assault on reason and sound legal analysis. It is also a step backward from the modern trend to make government more open and accessible to those it purportedly serves. Essentially, the majority opinion has a chilling effect on citizens who desire access to government records in order to become informed of the workings of *their* government. It also provides a way for overworked and underpaid public employees to discourage requests under the Freedom of Information Act by imposing an ever-increasing "reasonable" fee on all such requests. Therefore, for the reasons stated above, I dissent.